# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA PATRICK,<br><br>             Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No.  1:15-cv-00870-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 15, 16, 18) |

## I.
## INTRODUCTION

Plaintiff Patricia Patrick ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act.  On December 17, 2015, Plaintiff filed a motion for summary judgment.  (ECF No. 15.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from fibromyalgia, degenerative arthritis of the cervical, thoracic, and lumbar spine, osteoporosis, bilateral shoulder injuries, left carpal tunnel syndrome, depression,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 10.)

and anxiety. For the reasons set forth below, Plaintiff's motion for summary judgment shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the current Title XVI application for supplemental security income on February 24, 2012, alleging an onset of disability on January 1, 2016. However, SSI benefits are not payable prior to the month following the month in which the application is filed. See 20 CFR Section 416.335.

Plaintiff's application was initially denied on September 11, 2012, and denied upon reconsideration on March 6, 2013. (AR 81, 94-95.) Plaintiff requested and received a hearing before Administrative Law Judge G. Ross Wheatley ("ALJ Wheatley"). Plaintiff appeared for a videoconference hearing before ALJ Wheatley on October 7, 2013. (AR 26-70.) On November 1, 2013, ALJ Wheatley found that Plaintiff was not disabled. (AR 10-20.) On May 8, 2015, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

### A. Relevant Hearing Testimony

Plaintiff testified with her counsel at a videoconference hearing before the ALJ on October 7, 2013. (AR 26-70.) Plaintiff testified that she is 5'4'' and about 145 pounds. (AR 30.) Plaintiff testified that she attended the eleventh grade, she does not have her GED or high school diploma, and she did not attend special education classes. (AR 30.) Plaintiff attended accounting classes for a semester at a junior college in Fremont, California. (AR 31.) She never received any occupational training or special training for her jobs. (AR 32.) She can read, write, add, subtract, multiply, divide, and figure out how much change she should get when she goes to the store. (AR 31.)

Plaintiff last worked in 2005 for her own housekeeping business, but she stopped because she could no longer make the beds or lift anything heavy. (AR 32.) Plaintiff testified that she gradually gave up the houses that she was cleaning. (AR 32.) She had worked as a housecleaner for about six or seven years. (AR 32.) Plaintiff made $8 to $9 an hour and about $300 per week. (AR 32-33.) Plaintiff testified that she can no longer carry firewood, which she had delivered to

people for money until 2005.  (AR 40.)

Plaintiff testified that she suffered from fibromyalgia, degenerative arthritis, depression, osteoarthritis, and she had three trigger fingers on her left hand.  (AR 33.)  Plaintiff testified that her fibromyalgia causes her to have cramps and pain in her legs day and night that sometimes cause her not to be able to stand.  (AR 33, 46.)  She estimates that she has leg cramps for three quarters of the day.  (AR 47.)  Plaintiff testified that people can actually see her leg muscles contracting.  (AR 48.)  She has never been given a muscle relaxer for the muscle cramping.  (AR 48.)  When asked whether she has any sensitivity to touch, Plaintiff testified that the seams of her pants hurt most of the time.  (AR 48.)

Plaintiff's legs give way and she has fallen four times in the last two years and has had several near falls.  (AR 48-49.)  Plaintiff testified that "this last year" her legs gave out from underneath her when she was bringing in wood.  (AR 49.)  Plaintiff has trouble going up and down steps and she usually has to stop every third step when she is climbing steps.  (AR 57.)  Plaintiff's boyfriend modified the front steps to their house by putting in a ramp in the summer of 2012.  (AR 58.)  Plaintiff's boyfriend has to carry her from the bedroom to the living room to the bathroom two or three times a month because her legs go weak for a few days at a time and she is unable to stand on her legs.  (AR 60-61.)

She also thought that the pain in her hands and arms was because of her fibromyalgia, but now she is not sure because of her carpal tunnel diagnosis.  (AR 46.)  Plaintiff indicated that she had just changed doctors and that her new doctor, Dr. Neggler, had called for an MRI, but it had to be cleared with her insurance.  (AR 33.)  She was supposed to call her new doctor that day and schedule a full physical.  (AR 35.)

Plaintiff had previously seen Dr. Cunnington since 1986.  (AR 34.)  She last saw Dr. Cunnington in August 2013 for arm and shoulder pain and he put a brace on her arm and told her to rest her shoulder.  (AR 34.)  He did not recommend physical therapy or anything else.  (AR 34.)  Plaintiff takes Lortab three times a day to help her fibromyalgia pain.  (AR 35.)  Plaintiff indicated that Lortab helps her pain, but she believes that she would receive more relief if she was on the right medication.  (AR 35.)

3

1  Plaintiff testified that Dr. Cunnington determined that she has arthritis in her back and
2 ruptured discs in both sides of her upper and lower back. (AR 35-36.) Plaintiff had x-rays, but
3 did not have an MRI of her back or neck. (AR 36.) Dr. Cunnington had not recommended
4 spinal injections or anything else for Plaintiff's back besides medication, except he did
5 recommend physical therapy one time, but Plaintiff did not have transportation. (AR 36.) Dr.
6 Cunnington told Plaintiff to lay on her side instead of her back and not to lay on her stomach
7 with her legs straight out. (AR 36.) Plaintiff wears a back brace during the winter when it is
8 cold. (AR 49.) Plaintiff's back hurts her every day, including when she gets clothes out of the
9 washer and when she bends over to put her shoes on. (AR 49.)

10  Dr. Cunnington diagnosed Plaintiff's left wrist pain as carpal tunnel in August 2013.
11 (AR 36-37.) Dr. Neggler gave Plaintiff a shot at the top of her left shoulder in September 2013,
12 which helped, but she was not prescribed any other medications specifically for her carpal
13 tunnel. (AR 37.) Plaintiff also has pain in her right hand, but her left hand is twice as bad as her
14 right. (AR 52.) Plaintiff has cramping in her hands all the time, and specifically, three or four
15 times during a two hour timeframe. (AR 52-53.) The cramping in Plaintiff's hands gets worse
16 with activity. (AR 53.) After Dr. Cunnington's carpal tunnel diagnosis, Plaintiff started wearing
17 a brace on her left wrist, which she wears at night and ninety percent of the day. (AR 37.)
18 Plaintiff's wrist brace helps keep her hand from cramping. (AR 37.) Plaintiff testified Dr.
19 Cunnington had her take Lortab to help her right forearm and shoulder pain, which she has had
20 for six or seven years. (AR 51.)

21  Plaintiff testified that she also suffers from depression. (AR 38.) When Plaintiff wakes
22 up in the morning, she cries for no reason. (AR 38.) Plaintiff is not seeing a doctor for her
23 depression and she has never seen a psychologist or psychiatrist. (AR 38.) Plaintiff takes
24 diazepam at night and it helps her sleep. (AR 38.)

25  Most days, Plaintiff watches TV and does what she can around the house, including
26 doing a load of dishes or a load of laundry. (AR 38-39.) However, there are some days when
27 Plaintiff cannot do anything. (AR 38.) Plaintiff testified that it usually takes her an hour to do
28 one sink of dishes. (AR 38-39.) Plaintiff lives with her boyfriend of 18 years. (AR 39.)

4

Plaintiff's boyfriend helps her shower because she has lost her balance and slipped before. (AR 39.) Plaintiff sometimes is unable to snap her bra, button her pants, and put her hair up in a ponytail. (AR 56-57.) Plaintiff goes with her boyfriend to shop at the store and she is able to carry light items that weigh 5 pounds into the house. (AR 40, 58-59.) Plaintiff had been able to carry 10 to 15 pounds six months prior to the hearing, but her arms had gotten much worse by the time of the hearing. (AR 59.)

Plaintiff testified that she can walk for probably 10 minutes at a time before she has to rest her legs and she can sit for 20 to 25 minutes at a time. (AR 41, 47.) Plaintiff can lift a gallon of milk with her right hand when she braces it with her left hand, but she cannot lift it high enough to get it in the refrigerator because she is unable to lift the weight of the milk. (AR 41, 51.) Plaintiff testified that tying her shoe, picking something up, holding her hand in a tight fist, and doing dishes cause her hands to hurt. (AR 53.) Plaintiff is unable to lift up a cast iron skillet with one hand or open a jar of pickles, but she can grab plates one at a time off of a high shelf. (AR 53.) When Plaintiff lifts overhead, it hurts both of her shoulders and the pain shoots down her back. (AR 53-54.)

Plaintiff does not take out the trash. (AR 41.) Plaintiff does not read a lot at home, but she does like to read the newspaper and magazines, except she does not get a lot of magazines. (AR 42.) She does not have a home computer or a cell phone. (AR 42.) Plaintiff watches TV during the day while she is on the couch. (AR 62-63.) Plaintiff lays down flat for approximately 6 to 7 hours a day. (AR 63.)

Plaintiff has three stepchildren who live close to her, so she sees them on-and-off during the week, and she has a son who lives in the Bay area that she sees about once a month. (AR 42.) She does not get together with friends that much, but she is really close to her kids. (AR 42-43.) Plaintiff does not belong to a church. (AR 43.) Plaintiff testified that she does not have a driver's license because it expired. (AR 43.) She last drove approximately four years prior to the hearing before her license expired and her car quit. (AR 43.) Plaintiff's stepdaughter and boyfriend help her get around. (AR 43.) Plaintiff is alone at home sometimes when her boyfriend goes to work. (AR 54.) Plaintiff's mother comes and stays for two or three weeks

approximately every two months to help clean the house, do the dishes, do laundry, and vacuum. (AR 54-55.)  Plaintiff's niece also helps her do the dishes and clean out the refrigerator. (AR 55.) Plaintiff cannot make her bed because she cannot bend over because of her back. (AR 55.) She cannot vacuum because she cannot push and pull the vacuum. (AR 55-56.)  Plaintiff is able to mop approximately an 18 foot by 12 foot room, but it takes her two sessions. (AR 56.) Plaintiff is unable to plunge a toilet because she does not have the strength to push down on the plunger itself. (AR 56.)

Plaintiff is unable to pick up her granddaughter who weighs 23 pounds. (AR 49.)  When Plaintiff sits with her granddaughter, she puts her granddaughter between her legs and not on her legs. (AR 50.)  Plaintiff moves her legs back and forth and it helps when she stretches her legs out straight, but it does not matter whether she elevates them. (AR 50.)  Plaintiff has trouble getting out of a chair and getting out of bed. (AR 50.)

Plaintiff smokes about three quarters of a pack of cigarettes a day, but she is working on stopping. (AR 44.)  Plaintiff testified that she never drank, but when questioned further by the ALJ about her past drinking, admitted that she did drink when she was 18 or 19 years old before her son was born. (AR 44-45.)  She also admitted that she has had maybe the total of a six pack since her son was born twenty-nine years ago. (AR 45.)  Plaintiff testified that she smokes marijuana two or three times a week because it helps calm her nerves down and it "helps reduction of body." (AR 45.)  Plaintiff has never attended rehab or AA or NA. (AR 45.)

**B.   ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since February 24, 2012, the application date.
- Plaintiff has the following severe impairments: low back pain with degenerative disc disease and fibromyalgia.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

- Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except she has the ability to lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand or walk for approximately 6 hours per 8 hour work day, and sit for approximately 2 hours per 8 hour work day.  Plaintiff can frequently kneel and crawl and occasionally balance, stoop, crouch, kneel, crawl and climb ramps or stairs but never climb ladders, ropes or scaffolds.  Plaintiff has manipulative limitations with reaching and overhead reaching with the left upper extremity limited to a frequent basis.
- Plaintiff has no past relevant work.
- Plaintiff was born on February 28, 1965, and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the National Economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since February 24, 2012, the date the application was filed.

(AR 13-20.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. §

404.1520; Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in his analysis of Plaintiff's credibility and also in rejecting the opinion of Dr. Cunnington, the treating physician.

### A.   Plaintiff's Credibility

Plaintiff argues that the ALJ gave insufficient reasons to discredit Plaintiff. Plaintiff argues that the ALJ failed to articulate any, much less clear and convincing, reasons to reject Plaintiff's testimony. Defendant responds that the ALJ credited some of Plaintiff's testimony and gave valid reasons supported by the record for discrediting the other part of Plaintiff's testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his or her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282. Initially, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 17.)

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his or her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of

1  Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings
2  that support this conclusion and the findings must be sufficiently specific to allow a reviewing
3  court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not
4  arbitrarily discredit the testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)
5  (internal punctuation and citations omitted).

6  Social Security Regulation 96-7p states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

12  Here, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

16  (AR 17.)

17  Plaintiff contends that the ALJ did not explain his reasons for rejecting Plaintiff's
18  credibility.  Defendant, citing pages 17 and 18 of the administrative record, argues that the ALJ
19  found that the objective medical evidence and Plaintiff's own testimony were inconsistent with
20  disability.  Specifically, Defendant argues that Plaintiff in her disability report denied taking any
21  medications and Plaintiff failed to pursue and receive any mental health treatment.

22  While Defendant identifies parts of the ALJ's decision which the ALJ may have intended
23  to be reasons for discrediting Plaintiff, the Court finds that the ALJ did not clearly state any
24  reasons, much less clear and convincing reasons, for discrediting Plaintiff.  At this time, the
25  Court would be merely speculating as to the reasons for the ALJ discrediting Plaintiff's
26  allegations.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v.
27  Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  Further, the potential reasons that Defendant has
28  identified for the ALJ discrediting some of Plaintiff's complaints are insufficient to meet the

10

clear and convincing standard.

The ALJ stated that "[d]espite the [Plaintiff's] allegations of depression, she did not indicate she received any mental health treatment or was currently taking any psychotropic medications. Further[,] she did not indicate a single emergency room or overnight hospitalization for any of her alleged impairments." (AR 17.) The ALJ also stated that in a subsequent Disability Report that Plaintiff "denied she had seen or anticipated seeing a medical source for both physical or mental problems and denied taking any current medications." (AR 17.) Therefore, it appears that the ALJ may be referring to a conservative course of treatment by Plaintiff as a reason for discrediting Plaintiff. However, there is evidence in the record that Plaintiff had been prescribed Valium and Lortab less than a month prior to the date of that Disability Report. (AR 260.) If the ALJ's discussion of Plaintiff's Disability Reports was to show that Plaintiff had a conservative course of treatment, the ALJ's statements do not reflect that he considered that Plaintiff actually was prescribed medication, and therefore, the ALJ's discussion of Plaintiff's conservative course of treatment is faulty. The record also contains statements by Plaintiff that she was not taking medication, so it is possible that the ALJ may have been trying to state that he did not find Plaintiff credible because she failed to take her prescribed medications. However, the ALJ did not clearly indicate that he found Plaintiff incredible because she failed to take her medications.

Defendant argues that the ALJ discredited Plaintiff because in Plaintiff's final Disability Report she denied any changes in her activities of daily living despite allegedly worsening conditions and limitations. Plaintiff completed a Disability Report in February 2012. (AR 181-88.) The ALJ considered that in a subsequent October 2012 Disability Report, Plaintiff reported that her conditions worsened with increased pain in her legs and hands, she had new conditions, and she had new physical and mental limitations, but she denied any change in her activities of daily living. (AR 17, AR 169-74.)[2] However, this is not a clear and convincing reason to

---

[2] Although the ALJ referred to Plaintiff's October 2012 Disability Report (AR 169-74) as Plaintiff's final Disability Report, the May 2013 Disability Report (AR 164-68) is actually Plaintiff's final Disability Report.

11

discredit Plaintiff. It is possible that Plaintiff's pain and conditions may have worsened by the time of her October 2012 Disability Report, but not caused any changes to her activities of daily living from the ones she listed in her February 2012 Disability Report.

The ALJ may have been referencing a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations as a reason to discredit Plaintiff (see AR 17-18), but the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Accordingly, the Court finds that the ALJ did not provide clear and convincing reasons that are supported by substantial evidence in the record to discredit Plaintiff's testimony.

### B. This Action is Remanded for Further Proceedings

Plaintiff seeks remand for benefits or alternately seeks a remand for further development of the record. Defendant argues that if the Court finds that the ALJ erred, the matter should be remanded for further development of the record.

The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. District courts have flexibility in applying the credit as true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Further, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). The Ninth Circuit has recently clarified that "we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)).

Here, the record as a whole casts doubt on whether Plaintiff is disabled. There are few objective findings in Dr. Cunnington's treatment notes that support Dr. Cunnington's diagnoses and limitations. (AR 213-14, 234-37, 259-60.) When completing a musculoskeletal form dated September 6, 2012, Dr. Cunnington noted that Plaintiff had a "good range of motion." (AR 222.) Dr. Cunnington also indicated that Plaintiff has no swelling, warmth, redness, and tenderness in the joints. (AR 222.) Dr. Cunnington did indicate that Plaintiff has paravertebral muscle spasms and tenderness, but he noted that Plaintiff has no neurological abnormalities with respect to sensation, reflex, motor strength, and straight leg raise tests. (AR 222.) Plaintiff did not have any atrophy, disorganization of motor function, and limitations in reaching, handling, or fingering. (AR 222-23.) Dr. Cunnington indicated that Plaintiff's complaints of muscle pain, weakness, and upper extremity limitations affect her ability to lift or carry with her free hand. (AR 223.) Dr. Cunnington did not indicate that he did a rheumatoid factor test or sedimentation rate test. (AR 223.)

On July 31, 2013, the imaging report of Plaintiff's left shoulder x-ray stated that there was "[n]o acute osseous, joint, or soft tissue abnormality demonstrated" and that no follow up was needed. (AR 264.) The January 3, 2012 imaging report of Plaintiff's back showed a "slight increase lumbar lordosis. Degenerative spondylosis of lower thoracic spine. There is a spondylolisthesis of L4 on L5, which appears to be secondary to degenerative arthritis. Definite bony defects are not identified. The slip is approximately 4 to 5 mm. Vertebral bodies are intact. Disc spaces are normal." (AR 230.) The impression of Plaintiff's back was "[d]egenerative arthritis and pseudo spondylolisthesis, L4 on L5 as above." (AR 230.)

The Court finds that this action should be remanded for the ALJ to evaluate Plaintiff's credibility, further develop the record if necessary, and determine if Plaintiff's residual functional capacity, which may change on remand, when considered with Plaintiff's age, education, and work experience, would allow Plaintiff to perform work that exists in significant numbers in the national economy.

### C. Treating Physician's Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician,

Dr. Cunnington. Plaintiff argues that although the ALJ was critical of Dr. Cunnington's opinion, he did not specifically reject the opinion. Defendant counters that the ALJ properly gave more weight to the opinions of State agency physicians that were supported by objective findings in the medical record and consistent with the record as a whole. Defendant also argues that the 53 pages of medical records fail to support a disability finding and Dr. Cunnington made largely normal findings during his examination of Plaintiff.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)). The ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ found:

> Dr. Cunnington completed a Musculoskeletal form dated September 6, 2012 [Exhibit 4F]. Dr. Cunnington indicated diagnoses of low back syndrome and fibromyalgia with an onset date of 2006. Dr. Cunnington admitted the claimant had good range of motion of all joints and noted no abnormal instability of any joints, or any swelling, warmth, redness or tenderness of any joint. He found some paravertebral muscle spasms and tenderness but no abnormalities with respect to sensation, reflex or motor strength and straight leg raising tests were noted as negative.
>
> Dr. Cunnington likewise denied any atrophy, any disorganization of motor function, any limitations in reaching, handling or fingering. Moreover when asked about any clinical test results with Rheumatoid Factor or Sedimentation rates, none were indicated. Although Dr. Cunnington indicated the claimant's upper extremities are affected in terms of ability to lift and carry, the basis for this is the claimant's own subjective complaints and not any objective medical evidence.
>
> Dr. Cunnington also completed a Lumbar Spine Residual Functional Capacity Questionnaire [Exhibit 5F]. Dr. Cunnington indicated cervical spine disease and

> lumbar disc disease as the two primary diagnoses citing x-ray test results in support.  Dr. Cunnington opined the claimant could sit for 15 minutes at a time; stand for 10 minutes at a time and sit, stand, and walk less than 2 hours each during an 8-hour workday; while never being able to lift and carry even less than 10 pounds; rarely being able to twist, stoop, crouch or climb stairs and never being able to climb ladders.  Dr. Cunnington emphasized the claimant is unemployable.
>
> While there is no question the claimant was never seen repeatedly by Dr. Cunnington with diffuse pain complaints throughout her body; there are few if any objective findings to support Dr. Cunnington's less than sedentary Residual Functional Capacity (RFC).  In fact, Dr. Cunnington's assessments appear to be based almost entirely on the claimant's subjective complaints and not on objective evidence of Carpal Tunnel Syndrome (CTS), fibromyalgia, or any other diagnosis he noted in his treatment records [Exhibits 2F, 6F, 9F & 10F].

(AR 17-18.)

Furthermore, when discussing Dr. Sylvia Torrez, the ALJ stated:

> On July 2, 2012 the claimant underwent a Consultative Psychiatric Evaluation (CE) by Dr. Sylvia Torrez [Exhibit 7F].  The claimant reported that she gets up around ten o'clock in the morning, gets dressed and she watches television, goes grocery shopping, goes for short walks, listens to music, and she visits with family and friends and they visit her.  She reported that she "sits on the couch for most of the day," which is contrary to Dr. Cunnington's opinion that the claimant can only sit for 15 minutes at a time and less than 2 hours during an 8 hour workday.

(AR 18.)

To the extent that the ALJ rejected Dr. Cunnington's opinion because it was based on Plaintiff's subjective complaints, the ALJ should reconsider Dr. Cunnington's opinion on remand in light of Plaintiff's new credibility findings.  An ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that have been properly discounted.  See Fair v. Bowen, 885 F.2d 597, 605 (1989).  However, as discussed above, the ALJ did not provide clear and convincing reasons to discredit Plaintiff's testimony.  Any new credibility finding for Plaintiff may affect the ALJ's opinion of Dr. Cunnington's opinion.  As this action is being remanded to determine Plaintiff's credibility, the ALJ should reassess Dr. Cunnington's opinion upon remand in light of any new findings regarding Plaintiff's credibility.  The ALJ shall clearly state the weight he is giving Dr. Cunnington's opinion and the reasons why he is giving Dr. Cunnington's opinion that weight.

\ \ \

## V.
## ORDER

Accordingly, for the reasons stated, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED. This action is remanded for further proceedings consistent with this order. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 29, 2016**

UNITED STATES MAGISTRATE JUDGE